BORINQUEN HOME CORPORATION, Plaintiff and Appellant, v. SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. 12462. Decided December 18, 1961.

*B. Sánchez Castaño* and *R. Rivero Cervera* for appellant. *Francisco Espinosa, Acting Secretary of Justice, Arturo Estrella* and *Stanley R. Segal, Assistant Secretaries of Justice,* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

PER CURIAM.

During the taxable year ending April 30, 1949, appellant Borinquen Home Corporation executed sales of houses and lots, in cash as well as by deferred payments, for the sum of $3,078,533.52, the cost of which amounted to $2,470,532.18. It therefore realized a gross profit of $608,001.34. The issue in this litigation is confined to determining whether in connection with the deferred-payment sales the taxpayer was bound to include in its income return for that year the total amount of the profit realized. The Secretary of the Treasury included in the corporation's income the sum of $288,247.36 which the latter had deferred for the following years.[1] This amount represented obligations subscribed by the purchasers of the real properties, payable in succeeding years, and ordinarily secured by mortgage.

---

[1] The appellant determined the gain reported in its return and on which it paid the corresponding income tax as follows:

| | |
|---|---|
| Gross gain from cash sales (Caparra Heights) | $189,167.85 |
| Gross gain from cash sales (Bay View) | 4,734.01 |
| *Proportional gain* from instalment sales. | 125,852.12 |
| Total: | $319,753.98 |
| Deferred gain (202 cases) for succeeding years | 288,247.36 |
| Total: | $608,001.34 |

The deferred-payment sales were executed as follows:

*Example 1—Lot No. 30 of block 0 of Caparra Heights*

On July 2, 1947, Borinquen Home Corporation constituted a first mortgage in favor of Banco Crédito y Ahorro Ponceño on lot No. 30 of block 0 of Caparra Heights and the structure to be erected thereon by Long Construction Co., to secure the principal sum of $7,800 and interest thereon at 4 per cent annually, payable in 240 monthly instalments of $49.27. The principal sum was paid to the construction company upon presentation of the certificates of the work executed.

Upon termination of the construction of the house and other improvements, Borinquen Home Corporation subscribed on December 16, 1948 an agreement of purchase with Ramón F. López whereby the latter bound himself to purchase the real property—house and lot—for the total price of $9,800, to be paid as follows: Purchaser López

(a) would assume payment of the balance of the first mortgage to which reference has been made and which on the aforesaid date had been reduced to — $7,562.09

(b) cash payment, in the act, of the sum of — 200.00

(c) would constitute a second mortgage to be secured by the Veterans' Administration, for the sum of — 1,925.00

(d) would pay in the act of execution of the deed of conveyance the amount of — 112.91

$9,800.00

The Banco Crédito y Ahorro Ponceño requested in due time from the Federal Housing Commissioner the substitution of the mortgagor, to which it consented. On April 18, 1949, the corresponding consent was given whereby Borin-

quen Home Corporation was relieved from all liability under the aforesaid loan, wherefore purchaser López became the only one responsible for the payment thereof.

*Example 2—Lot No. 9 of block K of Caparra Heights*

This example is identical with the preceding example, except for the amounts involved and that the second mortgage constituted in favor of Borinquen Home Corporation was not secured by the Veterans' Administration.

*Example 3*

This example is identical with No. 2, except that a second mortgage was not constituted and that Borinquen Home Corporation accepted personal obligations payable in instalments.

The only issue in this appeal is whether the trial court erred in determining that the obligations received by the appellant corporation, secured by a second mortgage, had a market value, and therefore the total gain realized from these sales should be reported. The appellant invokes the application of art. 84 of Regulations No. 1 of the Income Tax Act of 1924 (Act No. 74 of 1925, Sess. Laws, p. 400).[2]

---

[2] The said article 84 reads as follows:

"Article 84.—*Deferred-Payment Sales of Real Estate Not on Installment Plan.*—In class (2) in article 82 the obligations assumed by the buyer are much better secured because of the margin afforded by the substantial first payment, and experience shows that the greater number of such sales are eventually carried out according to their terms. If these obligations have a fair market value, they are to be considered as the equivalent of cash and the property realized from the transaction is taxable income for the year in which the initial payment was made and the obligation assumed. If the buyer defaults and the seller regains title to the land by agreement or process of law, retaining payments previously made, he may deduct from his gross income as a loss in the year of repossession any excess of the amount previously reported as income over the amount actually received, and must include such real estate in his inventory at its original cost to himself (less any depreciation as defined in articles 128 and 129). If the obligations have no fair market value, the amount of the initial payment shall be applied against and reduce the basis,

As the appellant itself admits, the sales in question are deferred-payment sales not on the instalment plan, referred to in art. 82(2) of the said Regulations.

The notice to the taxpayer to pay the tax on the total gains realized from the sale constituted the administrative determination that the obligations received had a fair market value. *Borinquen Home Corporation* v. *Secretary of the Treasury, ante* p. 127; *Spence* v. *Secretary of the Treasury*, 78 P.R.R. 389, 393 (1955). This determination enjoyed the presumption of correctness of the administrative decisions of that officer, and the taxpayer was under the duty to overcome it to satisfaction. *Collazo* v. *Secretary of the Treasury*, 82 P.R.R. 629 (1961); *Carrión* v. *Treasurer of Puerto Rico*, 79 P.R.R. 350 (1956). Evidence was offered in this connection consisting of the testimony of Leonard D. Long, president of appellant Borinquen Home Corporation. The Secretary offered the statement of Salvador Vivó Vilella, an officer of the Government Development Bank. We have carefully examined the transcript and in effect it can not be concluded that the mortgage obligations did not have a *fair* market *value*, even though this value did not agree— weighing the evidence in the manner most favorable to the appellant—with their nominal or par value. It is to be noted that, although the mortgages were second mortgages, in most of the cases they were secured by the United States Veterans' Administration.

However, we must point out that the taxpaying corporation considered at all times the sales of real property as instalment sales covered by arts. 82 and 83 of the Regulations *supra*. Hence, the reference in the complaint filed to the fact that "in each one of those sales the initial payment was

as provided in section 7 and articles 32–44 of the property sold and if in excess of such basis, shall be taxable to the extent of the excess. Gain or loss is realized when the obligations are disposed of or satisfied, the amount being the difference between the basis as provided above and the amount realized therefor. See articles 32 and 125."

less than one fourth of the selling price" (par. 1), and that its income return was prepared "on the basis of the proportion existing between the total gross gain to be realized from each sale and the gross selling price under the contract," and that "such declaration complies with the provisions of arts. 82 and 83 of the Income Tax Regulations" (par. 2). The position now taken in this appeal is different from that assumed in the allegations. *Cf. Heirs of Suárez* v. *Sec. of the Treasury,* 82 P.R.R. 311 (1961). In this connection, the trial court determined—it is not challenged in this appeal—that the said articles did not apply because the initial payment tendered by the purchasers amounted to 80.35 per cent of the selling price agreed upon in the case of example 1, and to 90.25 per cent in the other two examples. It therefore considered that the balance of the first mortgage credit, payment of which was assumed by the purchaser, formed part of the initial payment, considering in particular that the mortgagee relieved the selling corporation from all liability with respect to the payment of such credit.[3] If the sales in question had been sales of real property on the deferred-payment plan not on the instalment plan referred to in art. 84—the only assumption in which the fact of whether or not the purchaser's obligations have a fair market value becomes important—and the appellant taxpayer's position that such obligations did not have a market value should prevail,

---

[3] See Internal Revenue Cumulative Bulletin No. 5 (1921), p. 91; Holmes, Federal Income Tax 221 (1917). As of the operation of the Income Tax Act of 1954, the mortgage credits, payment of which is assumed by the purchaser, are not considered part of the initial instalment, except in so far as they exceed the basis or cost of the property to the vendor. Article 44.2(c) of the Regulations approved July 11, 1957; 1 Paul & Mertens, Law of Federal Income Taxation 622, § 12.29 at 638 (1934).

Regarding the original debtor's liability in the event of foreclosure of the mortgaged property whenever the latter has been conveyed to a third party, and a sufficient amount is not obtained at the sale to cover the mortgage credit, see II Muñoz Morales, *Lecciones de Derecho Hipotecario* 135 *et seq.* (1946); *Carrera* v. *Palerm,* 52 P.R.R. 789 (1938); *López* v. *Sierra,* 49 P.R.R. 335 (1935); *Puig* v. *Sotomayor,* 47 P.R.R. 430 (1934); *Molina* v. *Pascual,* 42 P.R.R. 645 (1931).

the correct method for reporting the transactions was to recover first the cost or basis of the property sold rather than to apportion the gain—even with respect to the initial payment—as was done in the instant case.

■ The other error assigned regarding the incident on the approval of the computations has been decided adversely to the appellant in *Borinquen Home Corporation* v. *Secretary of the Trasury, supra.* See, also, *Petrovich* v. *Sec. of the Treasury*, 79 P.R.R. 237 (1956), and *Piñán* v. *Secretary of the Treasury*, 83 P.R.R. 303 (1961).

The judgment rendered by the Superior Court, San Juan Part, on September 9, 1954, will be affirmed.